**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ABSOLUTE ACTIVIST VALUE MASTER FUND LIMITED, ABSOLUTE EAST WEST FUND LIMITED, ABSOLUTE EAST WEST MASTER FUND LIMITED, ABSOLUTE EUROPEAN CATALYST FUND LIMITED, ABSOLUTE GERMANY FUND LIMITED, ABSOLUTE INDIA FUND LIMITED, ABSOLUTE OCTANE FUND LIMITED, ABSOLUTE OCTANE MASTER FUND LIMITED, AND ABSOLUTE RETURN EUROPE FUND LIMITED, | CASE NOS. 2:15-cv-328-FtM-29DNF and 2:16-cv-00047-UA-MRM<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs,

v.

SUSAN ELAINE DEVINE,

Defendant.

**DEFENDANT'S EMERGENCY MOTION TO PRECLUDE PLAINTIFFS FROM RELYING ON MATERIALS IN THE SWISS INVESTIGATIVE FILE OBTAINED THROUGH THE U.S.-SWISS MLAT AND ALL INFORMATION AND MATERIAL DERIVED THEREFROM AND FOR RELATED RELIEF**

Defendant Susan Elaine Devine ("Ms. Devine"), by and through her undersigned counsel, hereby moves, on an emergency basis, to preclude Plaintiffs from relying on: (1) those materials in the investigative file of the Swiss Prosecutor's Office that the Swiss obtained from the U.S. government through a U.S.-Swiss Mutual Legal Assistance Treaty ("MLAT") request; and (2) all information and documents derived from those materials. During the parties' meet-and-confer and in their preemptive motion to maintain the Court's hearing schedule on Ms. Devine's Emergency Motion for Protective Order and Motion to

Quash, Plaintiffs announced their intention to rely upon materials from an active federal grand jury proceeding obtained by the Swiss Prosecutor's Office, which, in turn, were obtained from the U.S. government pursuant to an MLAT request. (*See* Dkt. Entries 345 & 346; Dkt. Entry 52, 2:16-cv-00047-UA-MRM.) This Court should not permit Plaintiffs to rely upon these materials or information derived from them in this proceeding.[1]

### RELEVANT FACTUAL BACKGROUND AND ARGUMENT

Plaintiffs seek to secure relief in this litigation for the very same harm asserted as the basis for their six-year-old suit against the alleged Penny Stock Scheme Participants in the United States Court for the Southern District of New York (the "SDNY Action"), and for the very same harm they allege as "plaintiffs, as claimants in criminal and civil proceedings" that are ongoing in Switzerland (*see, e.g.*, Dkt. Entry 269-9 at 41).[2] And Plaintiffs now concede that, in this third litigation effort, they have "relied *entirely* on materials they had received from the Swiss File" in seeking the relief set forth in their Complaint and Amended Complaint and in support of the TRO they obtained from this Court.[3] (Dkt. Entry 345 at 7 (emphasis added).) Those materials include information and documents Plaintiffs

---

[1] Ms. Devine reserves the right to file additional motions with respect to other portions of the Swiss Investigative Office file when the Court determines whether Plaintiffs had the right to use any of the documents as opposed to summaries. (Dkt. Entry 248 at 12 n.3; *see also* Dkt. Entry 305 at 5 n.4.)

[2] Plaintiffs have characterized the report prepared by the expert they retained in this litigation, which was submitted to the Swiss Prosecutor's Office before they even filed the instant lawsuit, as "an expert report prepared by Appleby Fund Services ('Appleby') at the request of the Funds' counsel *concerning the Funds' Penny Stock Scheme losses* (the 'Appleby Report')." (*See* Dkt. Entry 341 at 7 (emphasis added); *see also* Dkt. Entry 339 at 17 ("Appleby is one of the Funds' experts in this matter").)

[3] Ms. Devine disputes that this concession is what Plaintiffs "stated in their initial Complaint, and described in detail in their papers in support of the TRO," as Plaintiffs represent (without citation) in their most recent filing on these issues. (Dkt. Entry 345 at 7.) But even assuming, *arguendo*, the Court were to take Plaintiffs at their word, their statement confirms that their possession and use of the MLAT materials has tainted their "entire[]" case against Ms. Devine. (*See id.*)

2

improperly obtained outside the course of discovery and have used in violation of the U.S-Swiss MLAT and rules pertaining to international discovery.

Specifically, Plaintiffs acknowledge that they are in possession of materials provided to the Swiss pursuant to the U.S.-Swiss MLAT by the U.S. government, which, at that time, had requested and obtained a stay of Plaintiffs' 2009 SDNY Action and which has continued to oversee an active, grand jury investigation pending in the United States District Court for the Central District of California. (*See* Dkt. Entry 237 at ¶¶ 3-5.) Those materials include information that is not only subject to privileges held by Ms. Devine (or her children) (including, for instance, the accountant-client privilege), but also information that was generated or produced in connection with the active grand jury proceedings that Plaintiffs would not otherwise have been able to obtain. (*See id.*; *see also* Dkt. Entries 248 at 11-15, 305 at 15-20.)

By now admitting the chain of custody for certain of those materials in the Swiss File (*see* Dkt. Entry 237 at ¶¶ 3-5) and their use and intent to continue using and relying upon that information to litigate their allegedly private, civil claims against Ms. Devine in this matter (*see* Dkt. Entry 345 at 7), Plaintiffs have run into a significant problem. The materials that Plaintiffs seek to rely upon from the Swiss investigative file were transmitted by the U.S. government to the Swiss government pursuant to the U.S.-Swiss MLAT and cannot permissibly be used in this civil litigation.[4] Plaintiffs' willful and improper use of the MLAT

---

[4] The instant dispute in the matter related to Ms. Devine's motion to quash the third-party subpoenas Plaintiffs' counsel served on her accountant, Collins & Associates (Dkt. Entries 18 & 27) (the "Collins Matter") concerns a discrete category of materials generated during or produced in connection with active, sealed grand jury proceedings that the U.S. government provided to the Swiss government pursuant to the U.S.-Swiss MLAT because those materials are subject to the limitations on use set forth in that binding treaty. Such materials

3

materials has already caused irreparable harm to Ms. Devine through the filing of this lawsuit and covert exploitation of that material to obtain an *ex parte* TRO restraining Ms. Devine's assets worldwide.

And, the damage is not yet complete. Plaintiffs now seek to employ the MLAT materials at every turn to assist themselves in the instant suit and to funnel information from these proceedings as part of a *de facto* joint venture with the prosecutorial arm of a foreign government. By way of example, Plaintiffs are:

(1) attempting to cleanse their unclean hands by using third-party discovery (the third-party subpoenas to Collins & Associates) to obtain the same MLAT materials and information unlawfully obtained and employed before;[5]

(2) seeking to use privileged MLAT materials and information to attempt to litigate the crime-fraud exception to the accountant-client privilege in order to preclude Ms. Devine's and her children's assertions of privilege over some of the very same documents;[6] and

(3) attempting to use the privileged MLAT materials to justify baseless objections to critical discovery Ms. Devine sought and has now been constrained to move to compel.[7]

Given the recent revelation "that with regard to their allegations about Devine's money laundering activities, they relied entirely on materials they had received from the Swiss File,"

---

include, but are not limited to, documents subpoenaed by the grand jury from Ms. Devine's accountants, which documents are otherwise privileged.

[5] (*See* Dkt. Entry 18, 2:16-cv-00047-UA-MRM.)

[6] (*See* Dkt. Entry 19, 2:16-cv-00047-UA-MRM, at 15-16 (citing Decl. of D. Spears (Dkt. Entry 20, 2:16-cv-00047-UA-MRM, at ¶¶ 5-7 & Ex. 3 and TRO at 50-59); Dkt. Entry 30, 2:16-cv-00047-UA-MRM at 2-3 (citing Decl. of D. Spears (Dkt. Entry 20, 2:16-cv-00047-UA-MRM, at Ex. 3 and Decl. of D. Spears (Dkt. Entry 31, 2:16-cv-00047-UA-MRM, at ¶¶ 5-9 & Exs. 3, 4, 5, 6, 13, 14, 15).)

[7] (Dkt. Entry 340 ("The impossibility of the Funds ever learning about their RICO injuries from any source other than the Swiss File is obvious when one reviews the details of Devine's asset holdings in the period before the Funds first learned of the Swiss investigation in late 2012. The 'Susan Devine Balance Sheet' (the 'Balance Sheet'), which the Funds initially obtained from the Swiss File (*see* Doc. #4, ¶ 10), proves the point…. Virtually all of the value reflected on the Balance Sheet derived from the Penny Stock Scheme and rightfully belonged to the Funds."); *see also* Dkt. Entry 321.)

4

(Dkt. Entry 345 at 7), it is clear that Plaintiffs will continue to employ the MLAT materials to guide their discovery pursuits and will ultimately attempt to use them at trial should the Court deny Ms. Devine's pending motion to dismiss.

Each of these acts is an infringement of Ms. Devine's Due Process rights and the privileges she holds and alone may waive. Collectively, they make a mockery of the U.S.-Swiss MLAT and established rules and protocols governing international discovery and establish, beyond dispute, that Plaintiffs are unlawfully serving as a domestic investigative arm for the Swiss government. Indeed, as to Plaintiffs' *de facto* joint venture with the Swiss government, their more recent efforts to funnel discovery from this matter to the Swiss Prosecutor's Office—discovery the Swiss Prosecutor would not, herself, have been able to obtain without making a request pursuant to the U.S.-Swiss MLAT or under 28 U.S.C. § 1782—are what precipitated Ms. Devine's filing of her Emergency Motion for Protective Order and serve as the predicate for the instant filing. (*See* Dkt. Entry 248 & 305.)

This Court has the inherent authority to sanction Plaintiffs for misconduct with respect to their possession, use, and intended use of the MLAT materials and other materials that are derived from that information. *See, e.g.*, *In re Southeast Banking Corp. Sec. and Loan Loss Reserves Litig.*, 212 B.R. 386, 395-96 (S.D. Fla. 1997) ("A court has 'inherent authority to control and preserve the integrity of its judicial proceedings. 'Deeply rooted in the common law tradition is the power of any court to manage its affairs which necessarily includes the authority to impose reasonable and appropriate sanctions. . . .'") (alterations, quotations, and citations omitted); *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) ("A bright-line rule prohibiting a court from regulating the use of

5

information or documents obtained through means other than discovery in the pending proceeding would result in inequitable consequences and could undermine the integrity of a court's judicial proceedings.");[8] *Cabotage v. Ohio Hosp. for Psychiatry*, Civ. Action No. 11-50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012) (holding that federal courts "possess the inherent authority to issue an order addressing Plaintiff's expressed intention to utilize the documents at issue in this case, especially in light of the fact that she obtained these documents outside of this Court's discovery process");[9] *Ashman v. Solectron Corp.*, Civ. Action No. 08-1430, 2008 WL 5071101, at *2 (N.D. Cal. Dec. 1, 2008) ("A federal court has inherent power to impose sanctions to prevent abuses, oppression, and injustice."); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, CIVIL ACTION NO. 1:04-CV-1015-JOF, 2007 WL 2479290, at * 3 (N.D. Ga. Aug. 28, 2007) (recognizing court's inherent power to sanction parties for improperly obtaining documents); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (recognizing that "[f]ederal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes" and prohibiting use of documents obtained improperly).[10]

---

[8] The *Smith* court considered these issues in the context of wrongfully obtained documents that were subject to privilege under Florida law, just as is the case with respect to the Collins & Associates materials the U.S. government transmitted to the Swiss government pursuant to the U.S.-Swiss MLAT, which are subject to Florida's accountant-client privilege as set forth in Ms. Devine's briefing with respect to the Collins Matter (*see* Dkt. Entries 18 & 27, 2:16-cv-00047-UA-MRM). *Smith*, 838 F. Supp. at 1576-77.

[9] In *Cabotage*, the court exercised its inherent authority to impose sanctions for the use of documents obtained improperly outside the scope of discovery even though it held that there was no private right of action under HIPAA to enforce HIPAA-related privilege or confidentiality issues associated with the documents and even though the Secretary of Health and Human Services was charged with enforcement of HIPAA. *See Cabotage*, 2012 WL 3064116 at *3.

[10] The principles addressed in the above case law are analogous to those of the fruit-of-the-poisonous-tree doctrine that apply in the context of criminal proceedings. In addition, Ms. Devine will plead the unclean hands doctrine as a defense to Plaintiffs' claims in Plaintiffs' Amended Complaint, in the event it survives Ms. Devine's pending motion to dismiss.

"Discovery self-help is not a protected activity," and so "[w]hen a party wrongfully obtains documents outside the normal discovery process, a number of different types of sanctions are available," including, without limitation, preclusion of use and derivative use and dismissal.[11] *See, e.g.*, *Ashman*, 2008 WL 5071101 at *2 & *3, *accord Southeast Banking*, 212 B.R. at 388, 396 (affirming magistrate judge's order requiring the identification and return of documents, precluding use of documents, and granting request for attorney's fees); *Smith*, 838 F. Supp. at 1578 (precluding use of privileged documents pursuant to court's "equitable powers to control, and preserve the integrity of, its judicial proceedings by limiting the use to which the documents could be put in the proceedings pending before the court"); *Cabotage*, 2012 WL 3064116 at *3-*4 (precluding plaintiff "from utilizing any of the documents that she removed from OHP in connection with her investigation of OHP's potential violation of professional or clinical standards in the instant action"); *Eagle Hosp.*, 2007 WL 2479290, at * 5-7 (striking answer and counterclaims as sanction for acquiring and attaching to court filings attorney-client privileged documents that were improperly obtained); *Shell*, 143 F.R.D. at 108-109 (requiring identification and return of documents, precluding use of documents, and precluding further contact with sources of internal documents). *Cf. Carrion v. City of New York*, No. 01Civ. 02255LAKDF, 2002 WL

---

[11] The Court's inherent power also includes the power to sanction a party's counsel as well as to impose monetary sanctions, including Ms. Devine's attorney's fees and costs. But, as one court observed, an offending party, such as the Plaintiffs here, cannot "buy himself out of the consequences of deliberate interference and subversion of the judicial process" with a lesser monetary sanction alone. *See Weaver v. ZeniMax Media, Inc.*, 923 A.2d 1032, 1044 (Md. Ct. App. 2007) (remanding to trial court for consideration of alternative sanctions); *see also Ashman*, 2008 WL 5071101 at *2 -4 (recognizing availability of "monetary sanctions" and awarding "expenses incurred by Solectron in connection with making the instant motions," in addition to ordering the return of all documents and preclusion of reliance on any privileged information unlawfully obtained outside the course of discovery in the litigation).

31093620, at *4 (S.D.N.Y. Sept. 18, 2002) (precluding use of privileged information obtained improperly under New York law); *People v. Kaiser*, 606 N.E.2d 695, 699-701 (Ill. App. Ct. 1992) (discussing *People v. Walley*, 575 N.E.2d 596 (Ill. App. Ct. 1991) and holding that trial court "properly quashed [subpoena] and suppressed the evidence derived from that procedure" where subpoena was improperly used to obtain privileged medical information).

The holding in *Southeast Banking* is instructive. There, the court sanctioned a party for engaging in a post-abuse sanitation tactic mirroring that of Plaintiffs' efforts with respect to the Collins & Associates subpoenas and crime-fraud arguments here. In *Southeast Banking*, the FDIC-receiver claimed that the plaintiff trustee "took advantage of the inadvertent production of these privileged documents by surreptitiously copying them, and then intentionally concealing the misappropriation while at the same time litigating a turnover proceeding to gain access to the very documents already in their possession." 212 B.R. at 389. The court affirmed the magistrate judge's sanctions for this abusive behavior and his holding that the trustee plaintiff "should have waited for the Court to determine the validity of his claim of joint privilege before copying all of the documents at issue and using some as exhibits in Court documents." *Id.* at 395-96.

Ms. Devine will not reiterate the factual and legal issues concerning Plaintiffs' and their counsel's unlawful possession and use of the MLAT materials in these proceedings and their more recent effort to maintain their *de facto* joint venture with the Swiss government by now seeking to funnel information from this litigation back to the Swiss government in violation of the stipulated protective order and the rules and protocols for international

8

discovery. Ms. Devine incorporates her briefing with respect to those issues as though set forth fully herein. (*See* Dkt. Entries 248, 305, 346.) Because Plaintiffs improperly obtained and used the MLAT materials to initiate this litigation—the heart of which is an alleged money laundering scheme they now represent as based "entirely" on the Swiss investigative file, including the MLAT materials (Dkt. Entry 345)—to engage in discovery, to attack Ms. Devine's assertions of privilege, to maintain objections to withhold discovery from Ms. Devine, and to act unlawfully as the domestic arm of the Swiss Prosecutor's Office, Ms. Devine submits that this Court's exercise of its inherent authority to sanction Plaintiffs pursuant to the foregoing authority is warranted.

Based on the information currently available to Ms. Devine, and the current posture of these proceedings, Ms. Devine respectfully requests that the Court enter a preclusionary order:

- prohibiting Plaintiffs from directly or indirectly using the MLAT materials from the Swiss file produced by the United States and any information or documents derived therefrom during the remainder of these proceedings, and, at a minimum, precluding their use at the hearing on the motions to quash the Collins and Associates subpoenas;[12]

- requiring Plaintiffs and their counsel to identify specifically those portions of the Amended Complaint that reference or rely upon MLAT materials;

---

[12] In light of the hearings scheduled for April 25, 2016 and April 26, 2016 on Ms. Devine's Emergency Motion for Protective Order and Motion to Quash, Ms. Devine notes, as she did in her request for a continuance, that Plaintiffs may not, in any event, use the Collins & Associates documents contained within the MLAT materials to establish a *prima facie* case sufficient to justify this Court's exercise of its authority to hold an *in camera* review of the Collins & Associates documents to determine whether any privilege exists and whether the alleged crime-fraud exception applies. (*See* Dkt. Entry 346 at 6-7 & n.6 (collecting authority holding that a party seeking an *in camera* review to consider application of the crime-fraud exception to privilege must establish a *prima facie* case without use of the privileged materials themselves).) Ms. Devine will raise appropriate objections to the use of any MLAT materials, including the Collins & Associates documents themselves, at the hearing on her Motion to Quash.

9

- requiring Plaintiffs and their counsel to identify by Bates number and produce to Ms. Devine, with appropriate load files, all MLAT materials in their possession, custody, or control;

- requiring Plaintiffs and their counsel to identify by Bates number and produce to Ms. Devine, with appropriate load files, all documents that incorporate, refer to, or rely upon the MLAT materials that are in their possession, custody, or control;

- scheduling a hearing after appropriate discovery for findings as to those portions of the Amended Complaint that reference or relied upon MLAT materials and, upon identification, striking those portions of the Amended Complaint.[13]

## EMERGENCY NATURE OF MOTION

Ms. Devine files this motion as an "emergency motion" under Local Rule 3.01(e) because of the three-week period of time in which hearings are currently scheduled to take place and the parties' need to prepare for those hearings and resolve the issues associated with Ms. Devine's pending Emergency Motion for Protective Order and Motion to Quash.

## CERTIFICATE OF GOOD FAITH

The undersigned counsel certify, in accordance with Local Rule 3.01(g), that they have communicated with Plaintiffs' counsel concerning the issues raised in this motion and earlier motions related to the MLAT materials. Plaintiffs deny that their possession and use

---

[13] Ms. Devine reserves her right to seek additional preclusionary relief or other sanctions to the extent warranted by Plaintiffs' identification and production of MLAT materials in their possession, custody, or control; by Plaintiffs' identification of the portions of their pleading that reference or rely upon MLAT materials or information derived therefrom; by information revealed during discovery; or by Plaintiffs' conduct in the future, including, but not limited to, dismissal, preclusion of evidence, claims, or fact or expert witnesses, monetary sanctions (including fines and attorney's fees and costs such as expert witness expenses, incurred in the past or yet to be incurred, in connection with any issue related to the MLAT materials or to Plaintiffs' improper possession or use of the MLAT materials), and appropriate sanctions against counsel. Ms. Devine further reserves her right to seek preclusionary relief with respect to Plaintiffs' use of materials from the Swiss Prosecutor's Office as alleged in Ms. Devine's Emergency Motion for Protective Order. (*See, e.g.*, Dkt. Entry 248 at 12, n.3; Dkt. Entry 305 at 5, n.4.)

10

of the MLAT materials is unlawful and oppose any preclusionary relief with respect to the MLAT materials.

## CONCLUSION

For the foregoing reasons, Defendant Susan E. Devine respectfully requests that this motion be granted and that the Court enter an order providing the preclusionary relief set forth above.

Dated: April 11, 2016                           Respectfully submitted,


By: __/s/ Carl F. Schoeppl_____
       Carl F. Schoeppl (Fla. Bar. No. 818518)
SCHOEPPL & BURKE, P.A.
4651 North Federal Highway
Boca Raton, Florida 33431-5133
Phone: (561) 394-8301
Fax: (561) 394-3121
carl@schoepplburke.com


By: __/s/ Ian M. Comisky_____
       Ian M. Comisky (Fla. Bar No. 225304)
       Matthew D. Lee (*pro hac vice*)
BLANK ROME LLP
One Logan Square, 130 North 18th Street
Philadelphia PA 19103
Phone: (215) 569-5646
Fax: (215) 832-5646
Comisky-im@blankrome.com

*Attorneys for Defendant Susan E. Devine*

11

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2016, I caused a true and correct copy of the foregoing to be served upon the following through the Court's ECF system:

SPEARS & IMES LLP
David Spears
Linda Imes
Christopher W. Dysard
Benjamin Silverman
Sharanya Sai Mohan
51 Madison Avenue
New York, New York 10010
Tel: (212) 213-6996
Fax: (212) 213-0849
dspears@spearsimes.com
limes@spearsimes.com
cdysard@spearsimes.com
bsilverman@spearsimes.com
smohan@spearsimes.com

KOZYAK TROPIN & THROCKMORTON, LLP
Thomas A. Tucker Ronzetti
Kenneth Hartmann
Maia Aron
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
tr@kttlaw.com
krh@kttlaw.com
ma@kttlaw.com

*Counsel for Plaintiffs*

Charles P. Pillans, III
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202 Tel: 904-353-0211
Fax: 904- 353-9307
cpp@bedellfirm.com

*Counsel for Conrad Homm*

William J. Schifino, Jr.
BURR & FORMAN LLP
Suite 3200
201 North Franklin Street Tampa, Florida 33602
Tel: 813-221-1764
Fax: 813-221-7335
wschifino@burr.com

*Counsel for Isabella Devine*

/s/ Ian M. Comisky
Ian M. Comisky